United States Court of Appeals
Fifth Circuit

**F I L E D**

June 27, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

**No. 06-60163**

---

**LARRY JAMES,**

**Plaintiff-Appellee,**

**versus**

**CINCINNATI INCORPORATED, an Ohio Corporation,**

**Defendant-Appellant.**

---

**Appeal from the United States District Court
for the Southern District of Mississippi
(3:03-CV-525)**

---

Before SMITH, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In this Mississippi diversity action, a jury found in favor of Larry James on his design-defect claim under the Mississippi Products Liability Act, MISS. CODE ANN. § 11-1-63 *et seq.* (MPLA). Cincinnati Incorporated seeks judgment as a matter of law (JMOL) and, in the alternative, a new trial or remittitur, claiming, *inter alia*, the district court erroneously admitted the testimony of James' expert. **AFFIRMED.**

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In 2001, James was injured at work while operating a press brake: a hydraulic machine for forming sheet metal into shapes dictated by dies placed in the machine. The press brake was manufactured by Cincinnati to the specifications of James' employer, Hunter Engineering. Cincinnati delivered and installed it in 1988. As delivered, the press brake was not equipped with certain safeguards for its point of operation: the point at which the die contacts the metal. The machine could be placed into operation by either a foot switch or dual palm buttons.

Use of those buttons, by requiring the operator's hands to be employed in activating the machine, ensures their removal from the point of operation. On the other hand, use of the foot switch leaves the operator's hands free, if not otherwise prevented by safeguards, to be in the point of operation when the die descends. This is what happened to James, who was aligning a piece of metal (piece part) in the machine when his hand was caught in the point of operation.

Subsequently, Cincinnati assisted Hunter in its safeguarding the subject press brake with a "light curtain": a presence-sensing device utilizing beams of light which, when broken, cause the press brake to stop.

James sued Cincinnati in Mississippi state court under the MPLA, claiming the press brake was defectively designed.

Cincinnati removed this action to federal court, based on diversity jurisdiction.

In support of his MPLA claim, James intended to present expert testimony through L.D. Ryan that the press brake was defectively designed because it had not been manufactured with a light curtain. Cincinnati moved *in limine* to exclude that testimony, asserting: Ryan was unqualified; and his testimony was unreliable, and therefore inadmissible, under Federal Rule of Evidence 702 (testimony by experts) and **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579 (1993). The motion was denied; but, the court did impose some limitations on that testimony.

The jury found for James on his MPLA claim, awarding him compensatory damages of $850,000 and assessing 60% fault to Cincinnati, 30% to Hunter, and 10% to James. Cincinnati, having moved for JMOL at the close of James' evidence and at the close of all the evidence, again moved for JMOL, or, alternatively, for a new trial or a remittitur. This post-verdict motion was denied.

## II.

Primarily at issue is whether the district court erred in: admitting Ryan's testimony; and denying Cincinnati JMOL. Also at issue is whether it erred in denying Cincinnati's alternative motion for a new trial or remittitur, in the light of: its refusing a jury instruction requested by Cincinnati; a cross-

examination question by James' counsel; and the amount of the jury award.  Each contention fails.

A.

In deciding whether JMOL should have been awarded, an appellate court must consider only admissible evidence.  Therefore, before reviewing the JMOL-denial, the contested admission of Ryan's testimony must be addressed.  *See* **Hodges v. Mack Trucks, Inc.**, 474 F.3d 188, 193 (5th Cir. 2006).

1.

The admission of expert testimony is reviewed only for abuse of discretion.  *E.g.*, **Guy v. Crown Equip. Corp.**, 394 F.3d 320, 324-25 (5th Cir. 2004).  For reversible error, the ruling must affect a substantial right.  FED. R. CIV. P. 61 (harmless error); FED. R. EVID. 103(a), (d) (evidentiary rulings); *e.g.*, **Guy**, 394 F.3d at 324.  Moreover, "[b]ecause a district court has broad discretion in deciding the admissibility *vel non* of expert testimony, we will not find error unless the ruling is *manifestly erroneous*".  **Guy**, 394 F.3d at 325 (emphasis in original) (citations omitted).  "'Manifest error' is one that 'is plain and indisputable, and ... amounts to a complete disregard of the controlling law'."  **Id.** (quoting **Venegas-Hernandez v. Sonolux Records**, 370 F.3d 183, 195 (1st Cir. 2004)).  For the reasons that follow, there was no manifest error.

Federal Rule of Evidence 702, as amended post-**Daubert**, requires a party seeking to introduce expert testimony to show:

4

"(1) [it] is based upon sufficient facts or data, (2) [it] is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case". FED. R. EVID. 702. Cincinnati challenges Ryan's testimony as unreliable for several reasons, including: he is a specialist in neither press brakes nor light curtains; he has previously been found an unreliable expert witness; he failed to subject his theory to peer review; he failed to examine the subject press brake or piece part; and he failed to examine or test any light curtains to determine, *inter alia*, if they would have prevented James' injury. (It bears noting that, during Ryan's testimony, despite Cincinnati's numerous challenges to its bases, it objected *only twice*. Moreover, many of those challenges were developed through its extensive cross-examination of Ryan.)

"[W]hether a proposed expert should be permitted to testify is case, and fact, specific". ***Hodges***, 474 F.3d at 194. Ryan, an engineer with an advanced degree in mechanical engineering and many years experience in product design, opined, *inter alia*: James' injury was not caused by a press-brake malfunction, but by his inadvertently activating the press brake using its foot switch; accordingly, there was no need to examine the subject press brake; the duty to safeguard the press brake should be imposed on Cincinnati, the manufacturer; and the addition of light curtains was a feasible design alternative, appropriate for most press-brake

5

operations, that would have prevented James' injury. In formulating his opinion, Ryan interviewed James and, *inter alia*, reviewed: depositions of other Hunter employees; pictures of the subject press brake; Cincinnati's relevant product literature; relevant regulations and industry standards; and patents for light curtains and other press-brake safeguards.

Among other things, Ryan did *not* test his proposed design alternative. Light curtains, which are sold by third-party vendors, are specifically listed, however, as a safeguarding option in Cincinnati's relevant product literature. Along that line, as noted, subsequent to James' injury, Cincinnati assisted Hunter in safeguarding the subject press brake with a light curtain. Accordingly, Ryan's failure to test is *not* fatal to his testimony. *See* **Watkins v. Telsmith, Inc.**, 121 F.3d 984, 990 (5th Cir. 1997) ("[t]esting is not an absolute prerequisite to the admission of expert testimony on alternative designs" (internal quotation marks omitted)).

2.

Regarding the JMOL-denial, Cincinnati primarily contends there was insufficient evidence to establish, as required for an MPLA design-defect claim: the product "was designed in a defective manner", MISS. CODE ANN. § 11-1-63(a)(i); or "there existed a feasible design alternative that would have to a reasonable probability prevented the harm ... without impairing the utility

6

..., practicality, or desirability of the product", § 11-1-63(f)(ii).

A JMOL-denial is reviewed *de novo*. *E.g.*, **Hodges**, 474 F.3d at 195. JMOL is proper when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue". FED. R. CIV. P. 50(a)(1) (as amended effective 1 December 2006); *see also* FED. R. CIV. P. 50(b) (as amended effective 1 December 2006) (post-trial JMOL). All of the admissible evidence is reviewed, of course; but, we may not make credibility determinations or weigh evidence. *E.g.*, **Arsement v. Spinnaker Exploration Co., LLC**, 400 F.3d 238, 249 (5th Cir. 2005)*.* Further, that evidence, and all reasonable inferences from it, are viewed in the light most favorable to the verdict. *E.g.*, **id.**

Viewed in that light, a reasonable jury could find for James on the contested MPLA design-defect elements. In addition to Ryan's above-described testimony and Cincinnati's relevant product literature, Cincinnati's expert: testified that the press brake had been subsequently safeguarded with a functioning light curtain; and acknowledged the possibility that an operator's arm could have broken the beams of a safeguard light curtain while reaching into the point of operation during the subject bending operation.

7

B.

Cincinnati contests the denial of its alternative motion for a new trial or remittitur. The denial of a new-trial motion is reviewed for abuse of discretion. *E.g.*, **Whitehead v. Food Max of Miss., Inc.**, 163 F.3d 265, 269 (5th Cir. 1998). The remittitur standard of review is discussed in part II.B.3.

Cincinnati advances three bases in support of its alternative claim, each of which is unavailing. (Because the district court did *not* err in denying JMOL, to the extent Cincinnati challenges the denial of a new trial based on insufficient evidence, such challenge fails. *See* **id.** (noting our JMOL-denial standard of review "is far easier to satisfy than" that for denial of a new trial based on insufficient evidence)).

1.

Cincinnati contests the district court's not allowing its requested instruction regarding intervening or superseding negligence. Such a refusal is reviewed for abuse of discretion. **Kanida v. Gulf Coast Med. Pers. LP**, 363 F.3d 568, 578 (5th Cir. 2004). An instruction-refusal is reversible error "only if the [requested] instruction 1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the [party's] ability to present a given [defense]". **Id.** (second alteration in

8

original) (internal quotation marks omitted).  There was no abuse of discretion.

Consistent with its claim that Hunter violated OSHA regulations by failing to safeguard the press brake, Cincinnati requested a jury instruction that Hunter's negligence could constitute an intervening or superseding cause of James' injury, relieving Cincinnati of liability.  The instruction was refused because the district court found, as a matter of law:  Hunter's failure to safeguard was *not* so unforeseeable as to relieve Cincinnati of potential liability.

The requested instruction, which focused primarily on foreseeability, was a substantially correct statement of law. *See*, *e.g.*, **Newell v. S. Jitney Jungle Co.**, 830 So.2d 621, 623 (Miss. 2002).  Nonetheless, it was covered substantially in the charge as a whole, which, *inter alia*:  stated "[n]egligence is a proximate cause of an injury if it directly, and in natural and continuous sequence, produces or contributes substantially to producing such injury"; stated "[a]n element or test of proximate cause is that an ordinarily prudent person should reasonably have foreseen that some injury might probably occur"; and allowed the jury, in determining whether the press brake was defectively designed, to "consider[, *inter alia*,] ... [Cincinnati's] foreseeability that [Hunter] would not supply proper safety accessories even though aware of the machine's danger without them".

9

Cincinnati next maintains a new trial should be granted because of a question by James' counsel while cross-examining Cincinnati's product-safety manager.  Counsel asked the following about an unrelated, but factually similar, case:  "[Y]our company was assessed damages in the amount of $450,000, were [sic] they [sic] not?"  The witness responded:  "I don't know.  Don't remember."  Cincinnati did *not* object, but now maintains the question was meant to mislead, prejudice, and confuse the jury.

As Cincinnati concedes, its not having objected in district court dictates only plain-error review.  *E.g.*, **Tompkins v. Cyr**, 202 F.3d 770, 779 (5th Cir. 2000); *see also* FED R. EVID. 103(d).  Under such review, Cincinnati must show a clear or obvious error that affected its substantial rights.  *E.g.*, **Tompkins**, 202 F.3d at 779.  Even then, we retain discretion to correct the error; ordinarily, we will *not* do so unless it "would seriously affect the fairness, integrity or public reputation of judicial proceedings if left uncorrected".  **Id.**

Needless to say, the question falls far short of constituting reversible plain error, particularly in the light of:  its isolated nature; the witness' not confirming the prior verdict; and the jury instructions, which specified that "any statements ... made by the lawyers are not evidence in the case" and "what the lawyers say is not binding upon you".  *See*, *e.g.*, **Dixon v. Int'l Harvester Co.**,

754 F.2d 573, 586 (5th Cir. 1985) (where plaintiff's counsel requested jury to "send a message", there was no plain error "[i]n view of the [statement's] context ... and the court's lengthy instructions to the jury making clear that it was to decide the case based solely upon the evidence").

3.

Finally, Cincinnati contends, particularly in the light of the above-discussed question by James' counsel, that the jury award was against the overwhelming evidence and indicated speculation, passion, and confusion.

In reviewing a jury award, we are reviewing the denial of a motion for a new trial or remittitur. *E.g.*, **Green v. Adm'rs of the Tulane Educ. Fund**, 284 F.3d 642, 660 (5th Cir. 2002). "A jury award is entitled to great deference and should not be disturbed unless it is entirely disproportionate to the injury sustained." **Id.**

The award was supported by adequate evidence. The jury was presented with: medical-expenses and lost-wages evidence; and evidence that James' injury resulted in a permanent impairment to his dominant hand. Further, the jury was instructed to consider, *inter alia*, James' pain and suffering, mental anguish, and loss of enjoyment of life.

11

## III.

For the foregoing reasons, the judgment is

**_AFFIRMED._**