# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 15, 2013

Lyle W. Cayce
Clerk

No. 13-30281

CRAIG MOORE, Individually and on behalf of minor child, A.D.M.; TONI JEANNE LABAT MOORE, Individually and on behalf of minor child A.D.M,

Plaintiffs-Appellants,

v.

INTERNATIONAL PAINT, L.L.C.,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
Civil Action No. 2:11-CV-1001

Before STEWART, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

PER CURIAM:*

Appellants Craig Moore ("Moore") and Toni Jeanne Labat Moore sued Appellee International Paint, L.L.C. ("IP") under the Louisiana Products Liability Act ("LPLA"), alleging that Moore developed multiple myeloma due to his exposure to benzene contained in IP's paints and paint thinners during his work at the Avondale Shipyards ("Avondale") from 1988 to 1990. In support of their claims, Appellants retained Dr. Bhaskar Kura to provide expert

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

testimony concerning, among other things, Moore's cumulative benzene exposure while using IP's products at Avondale.

After Dr. Kura submitted his expert report, IP filed a motion *in limine* to exclude Dr. Kura's opinion under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). On November 30, 2012, the district court issued a 21-page order granting the motion. Among other things, the district court found that Dr. Kura's opinion as to Moore's cumulative benzene exposure was insufficiently reliable to pass muster under *Daubert* because Dr. Kura lacked a sufficient factual basis for his conclusions. Five days later, the court granted IP's motion for summary judgment with respect to all the LPLA claims, partly on the ground that without Dr. Kura's testimony, the Appellants could not prove essential elements of those claims. On appeal, Appellants contend that the district court erred in excluding Dr. Kura's testimony and granting IP's motion for summary judgment. For the following reasons, we AFFIRM.

## I.

This court reviews rulings on the admissibility of expert testimony for abuse of discretion. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998) (en banc). "[W]e have recognized that district courts are given wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge will not be disturbed on appeal unless manifestly erroneous." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (internal alteration and quotation marks omitted). In particular, "a district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007).

Accordingly, we cannot reverse the district court's decision to exclude Dr. Kura's opinion unless we find that the court committed a "plain and

indisputable" error "that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)) (internal quotation marks omitted).  Further, although the district court's summary judgment order relied primarily on its exclusion of Dr. Kura's opinion as to the amount of benzene in IP's products, neither party disputes that the Appellants cannot succeed on their LPLA claims without Dr. Kura's testimony concerning Moore's cumulative benzene exposure.  Indeed, in their brief,[1] the Appellants concede that "[t]he district court's grant of summary judgment was a foregone conclusion after it granted IP's motion in limine and excluded the testimony of Dr. Kura" and that "[w]ithout Dr. Kura's testimony, [Appellants] had no expert to testify that . . . Moore had been harmed as a result of the products' unreasonably dangerous characteristics."

## II.

Among the conditions imposed by the Federal Rules of Evidence on the admissibility of expert opinion testimony is that the testimony be "based on sufficient facts or data." FED. R. EVID. 702(b).  Under the framework explained in the Supreme Court's *Daubert* decision, "Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotation marks omitted).  The *Daubert* reliability analysis applies to, among other things, "the facts underlying the expert's opinion." *Knight* 482 F.3d at 355 (internal quotation marks omitted).  In particular, an opinion based on "insufficient, erroneous information," fails the reliability standard. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (affirming exclusion of expert opinion that relied on false assumptions rebutted by

---

[1] Appellants did not submit a reply brief.

undisputed record evidence). Although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004), "the existence of sufficient facts . . . is in all instances mandatory," *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

Of course, "[w]hen facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts." FED. R. EVID. 702 advisory committee's note. Generally, the "fact-finder is entitled to hear [an expert's] testimony and decide whether . . . the predicate facts on which [the expert] relied are accurate." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). At the same time, however, expert testimony that relies on "completely unsubstantiated factual assertions" is inadmissible. *Hathaway*, 507 F.3d at 319 n.4. When an expert's testimony is "not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position," the trial court should exclude it. *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

## III.

The district court identified numerous aspects of Dr. Kura's cumulative exposure analysis that either had no support in the record or were flatly contradicted by all the available evidence. In particular, the district court noted the following:

Dr. Kura estimated the total number of hours Moore spent in proximity to the products allegedly containing benzene in 1988 (when the bulk of the alleged exposure took place) by dividing Moore's total earnings from his work at Avondale by an hourly rate of $6.00. The undisputed evidence, however, showed that Moore was paid at hourly rates of $6.99, $7.44, and $8.00 that year.

Dr. Kura's analysis assumed that when Moore was using IP's products, he was always indoors. In his deposition testimony, which was the only evidence on this point, Moore stated that he used IP's deck grey paint and IP's paint thinner outdoors while working at Avondale. On top of his erroneous assumption that Moore only used IP's products indoors, Dr. Kura also assumed that the indoor spaces where Moore worked were always unventilated. The available evidence on this point came from the deposition testimony of Avondale employee Danny Joyce as well as from Moore's deposition. Joyce testified that Avondale had an extensive ventilation system, while Moore's testimony was that the ventilation was good at times and nonexistent at other times. There was nothing in the record to suggest that Moore *always* worked without ventilation.

Moore worked as both a painter and a sandblaster at Avondale. There was no evidence as to what percentage of his Avondale work was sandblasting as opposed to painting. Moore also testified that when he was painting, he first prepared the surface to be painted by grinding, scraping, or using sandpaper on it. Dr. Kura's analysis purported to account for Moore's work as a sandblaster by allocating 90% (as opposed to 100%) of the hours he spent at Avondale to painting, but it did not account for any of the preparatory tasks Moore testified that he performed.

Moore testified that he always used a respirator while painting, but it *sometimes* became clogged after an hour of painting. He also testified that when his respirator became clogged, he would get a new one during lunch. Dr. Kura's analysis assumed that Moore's respirator *always* failed within one hour and that he never obtained a replacement respirator.

In addition to the assertions described above, which the district court correctly found to be not only lacking in evidentiary support but also in conflict with all the available evidence, Dr. Kura made a number of other assumptions

No. 13-30281

that, while not strictly inconsistent with the evidence, had no basis in the record.  Appellants argue that "[t]he district court simply disagreed with the professor's expert judgment about the underlying facts and the weight given to them."  Appellants might have a point if Dr. Kura had identified some reason for assuming the facts he did for his analysis.  At his deposition, however, the only basis Dr. Kura cited for many of his assumptions was the absence of any testimony from Moore on that particular point.  But, where the primary witness's deposition testimony reflects "uncertain[ty] regarding many details necessary" to the expert's analysis, the expert may not "overcome th[e] evidentiary lack" with "the furtive inclusion . . . of supposed facts not in the record." *Hathaway*, 507 F.3d at 318—19.

To be sure, reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record.  Further, a few scattered errors in an expert report are not necessarily grounds for exclusion.  Here, however, the universe of facts assumed by the expert differs frequently and substantially from the undisputed record evidence.  Additionally, the expert made numerous assumptions with no apparent underlying rationale.  Accordingly, the district court did not abuse its discretion in holding that Dr. Kura's opinion concerning Moore's cumulative benzene exposure was inadmissible under Federal Rule of Evidence 702.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.