**Emilio MORRIS, a/k/a Emilio Morris–Andino, Plaintiff, Appellant,**

v.

**The GOVERNMENT DEVELOPMENT BANK OF PUERTO RICO, et al., Defendants, Appellees.**

No. 93–2389.

United States Court of Appeals, First Circuit.

Heard June 6, 1994.

Decided June 29, 1994.

Juan M. Masini–Soler, with whom Ramon Rivera–Iturbe, Hato Rey, PR, was on brief, for appellant.

John F. Nevares, with whom Ilsa Y. Figueroa–Arus and Smith & Nevares, Santurce, PR, were on brief, for appellees.

Before SELYA, CYR and BOUDIN, Circuit Judges.

SELYA, Circuit Judge.

Plaintiff-appellant Emilio Morris–Andino (Morris) appeals from an order of the district court granting summary judgment against him in a suit that he had brought under 42 U.S.C. § 1983 (1988). We affirm.

## I.

### Background

Appellant is a financial analyst who has been employed by the Government Development Bank, an agency of the Commonwealth of Puerto Rico, since 1965. On June 6, 1989, appellant received a letter from Emilio Pena–Fonseca, a senior vice president of the bank, telling him that he was under investigation for alleged illegalities related to the performance of his official duties.[1] Shortly thereafter, appellant appeared at an administrative hearing and denied the charges. No other action was taken in this time frame.

On September 20, the Commonwealth preferred criminal charges against appellant, alleging that he had committed the felony of undue influence.[2] Following his arrest, appellant received a letter from Ramon Canter–Frau, president of the bank, suspending him from his post with pay "until further notice." This letter bore a date of October 9, and appellant does not deny that he received it on that day.

On October 26, appellant's prospects brightened; a commonwealth court found no probable cause and dismissed the pending criminal charges. Buoyed by this victory, appellant wrote a letter to the bank's board of directors inquiring about the status of his suspension. The chairman of the board, Ramon Garcia Santiago (Garcia), acknowledged appellant's query by letter dated November 27. Garcia informed appellant that the suspension constituted a temporary measure that would remain in effect pending the completion of an internal investigation being conducted by the bank. Garcia's letter further noted that there had not yet been any "final decision" that could be appealed to the board of directors.

On December 26, appellant received another letter from Canter–Frau. This missive notified appellant that two internal charges

---

1. All dates mentioned in this opinion describe events occurring in 1989 unless otherwise indicated.

2. The anti-corruption statute under which Morris was charged provides in pertinent part:

    Every person who obtains or attempts to obtain from another any benefit by claiming or pretending that he is in a position to influence, in any way, the conduct of a public official or employee with respect to the exercise of his functions, shall be punished [as provided by law].

    P.R.Laws Ann. tit. 33, § 4364 (1983).

had been lodged against him and offered him an opportunity to defend himself in respect to these charges at an administrative hearing. The letter stated that a failure adequately to refute the charges could lead to appellant's discharge.

Just under a year later, appellant filed suit against the bank and various bank officials, including Garcia, Canter–Frau, and Pena–Fonseca. Invoking 42 U.S.C. § 1983, appellant claimed that the defendants had suspended him based on his race and political beliefs, thus violating his civil rights. The defendants denied the accusations and, in due season, moved for summary judgment. They contended, *inter alia,* that the suit, which had been commenced on December 21, 1990, was time-barred. The motion was referred to a magistrate judge who recommended granting it. The district court honored the recommendation. Morris now appeals.

## II.

### Applicable Legal Principles

#### A.

#### The Summary Judgment Standard

Summary judgment is appropriate when the record reflects "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party...." *United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.),* 960 F.2d 200, 204 (1st Cir.1992). By like token, " 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

Appellate review of an order granting summary judgment is plenary. *See Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 352 (1st Cir.1992). In undertaking such review, the court of appeals must scrutinize the summary judgment record in the light most amiable to the party opposing the motion, indulging all reasonable inferences in that party's favor. *See Pagano,* 983 F.2d at 347; *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

■ Notwithstanding the liberality of this standard, the nonmovant cannot simply rest on perfervid rhetoric and unsworn allegations. When, for example, defendants invoke Rule 56 and identify a fatal flaw in a plaintiff's case, it becomes the plaintiff's burden to produce specific facts, in suitable evidentiary form, to contradict the flaw's existence and thereby establish the presence of a trialworthy issue. *See Rivera–Muriente,* 959 F.2d at 352. If the plaintiff fails to shoulder this burden, then the court may adjudicate the motion as a matter of law.

■ In an appropriate case, Rule 56 can be employed to determine the applicability of a statutory time bar to a particular set of facts. *See id.; see also Jensen v. Frank,* 912 F.2d 517, 520 (1st Cir.1990).

#### B.

#### The Limitations Period

Local law determines the limitations period for section 1983 claims. *See Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985). As a general rule, federal courts borrow the limitations period for personal injury actions and apply that period to section 1983 claims. *See id.* at 276, 105 S.Ct. at 1947. In Puerto Rico, the applicable limitations period is one year. *See* P.R.Laws Ann. tit. 31, § 5298(2) (1991); *see also Rivera–Muriente,* 959 F.2d at 353; *Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 42 (1st Cir.1990); *Torres v. Superintendent of Police,* 893 F.2d 404, 406 (1st Cir.1990).

■ In cases brought pursuant to section 1983, an inquiring court must consult federal law in order to fix the point in time from which the limitations period begins to accrue. *See Rivera–Muriente,* 959 F.2d at 353; *Street v. Vose,* 936 F.2d 38, 40 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992). Under the federal rule, accrual commences when a

plaintiff knows, or has reason to know, of the discriminatory act that underpins his cause of action. *See Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981); *Delaware State Coll. v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *Rivera–Muriente,* 959 F.2d at 353.

### III.

### *Analysis*

The issue on appeal is whether the district court appropriately entered summary judgment on the ground that appellant sued beyond the one-year limitations period. Since appellant commenced his action on December 21, 1990, our inquiry reduces to whether appellant's cause of action accrued more than one year before that date. The defendants contend that the October 9 letter, which notified appellant of the suspension, sufficed to wind the limitations clock and start it ticking. Appellant contends that he was not on sufficient notice of his predicament until he received the December 26 letter, and that the clock did not begin to tick until that moment. The district court found that the defendants' clock kept better, more accurate time. We agree.

The rule in an employment discrimination case is that the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act (which is another way of saying that the period begins to run when the employee learns of the adverse employment action). *See Rivera–Muriente,* 959 F.2d at 353 (holding that unequivocal notice of the adverse employment action is all that is required to trigger the limitations period) (collecting cases); *see also* Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation* § 9.05 at 265 (3d ed. 1991) ("[I]t is only necessary for the plaintiff in an employment situation to be effectively notified of a discharge for the cause of action to accrue at the time of notification."). Thus, the key question to be answered here is temporal: at

what juncture did appellant reliably know of the injury to which this lawsuit relates? *See Rivera–Muriente,* 959 F.2d at 353. In answering this question, the critical datum is the point in time at which the discriminatory act occurred.[3] *See Ricks,* 449 U.S. at 258, 101 S.Ct. at 504.

We think that the October 9 letter speaks for itself—and its tones are stentorian. That letter stated in plain terms that the bank had suspended appellant indefinitely. It provided ample and unequivocal notice of the adverse employment action. The terms and conditions of the suspension did not vary in any way from that moment forward. Consequently, the limitations clock began to tick when appellant received the letter.

We reject appellant's asseveration that the letter of December 26, rather than the letter of October 9, marks the beginning of the limitations period. The later letter did nothing more than provide notice to appellant of the continuance of his suspension. Hence, this letter, which signifies a particularly painful point in the process because it advises appellant, presumably for the first time, of the possibility that he might be cashiered, had no effect upon the running of the limitations period. After all, the point in time at which the consequences of the act become hardest to bear—which may or may not coincide with the occurrence of the act itself—has no relevance for purposes of framing the limitations period. *See Chardon,* 454 U.S. at 8, 102 S.Ct. at 8; *Ricks* 449 U.S. at 258, 101 S.Ct. at 504.

Appellant has another string to his bow—but it is badly frayed. This initiative rests on the notion that appellant's claim did not accrue until he knew of *both* the suspension and the defendants' discriminatory animus. Stated a different way, appellant contends that his cause of action existed in what amounts to a state of suspended animation until he became aware of the racial and political motives behind the adverse employ-

3. We believe it is vital to this inquiry that appellant is only contesting his suspension. The bank never discharged him, and, in fact, appellant's counsel reported at oral argument that the bank

eventually cleared him of all charges and reinstated him in his position. Moreover, appellant received his salary and benefits throughout the period of his suspension.

ment decision. We cannot countenance this contention.

It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee. *See Ricks*, 449 U.S. at 261, 101 S.Ct. at 505–06; *see also Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir.1994) (explaining that, in such situations, the "limitations period ... ordinarily starts when the plaintiff knows ... of the harm on which the action is based") (citation and internal quotation marks omitted); Nahmod *supra*, § 9.04 at 252–53 (collecting cases). This rule of law is grounded on a solid foundation: when an employee knows that he has been hurt and also knows that his employer has inflicted the injury, it is fair to begin the countdown toward repose. And the plaintiff need not know all the facts that support his claim in order for countdown to commence. *See Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir.1994); *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 645 (5th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989); *see also Baker v. Board of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir.1993); *Rivera–Muriente*, 959 F.2d at 354; *cf. Jensen*, 912 F.2d at 521–22 (enunciating substantially similar rule in respect to time constraints applicable to the filing of administrative notices in Title VII cases).

Morris's case in no way warrants a departure from this settled rule of law. By October 9, appellant had learned authoritatively of his suspension. He knew the stated reason for it and could assess its legitimacy. He knew how he had conducted himself while on official business. As a veteran employee, he knew (or, alternatively, was chargeable with knowledge of) the agency's policies, practices, and precedents. No more was exigible. Appellant had sufficient information in October to enable him to bring a discrimination claim against the bank.[4]

■ At the expense of carting coal to Newcastle, we add two final comments. First, we note that the rules for prescription of employment discrimination actions are not inflexible. In a proper case, the doctrine of equitable tolling ensures fundamental fairness. *See, e.g., Rivera–Gomez v. de Castro*, 843 F.2d 631, 633–36 (1st Cir.1988). In this instance, however, appellant, though hinting at the possible applicability of equitable tolling, has neither explicitly claimed the doctrine's benefit nor demonstrated an entitlement to it. Any such argument is, therefore, waived. *See Ryan v. Royal Ins. Co.*, 916 F.2d 731, 734 (1st Cir.1990) (ruling "that issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned"); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) (same), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

In any event, the facts of this case do not lend any encouragement to the possibility of equitable modification. To prevail on such a claim, an employee must prove not only that he was unaware of the employer's discriminatory animus but also that the employer actively misled him, to his detriment. *See Jensen*, 912 F.2d at 521. There is no evidence in the instant record to suggest either misleading conduct or detrimental reliance.

Second, we think that deviating from the usual rule as appellant entreats would undermine the core principle on which statutes of limitations in employment discrimination cases rest, namely, protecting employers "from the burden of defending claims arising from employment decisions which are long past," while, concomitantly, protecting those employees who act celeritously to enforce their perceptible rights. *Ricks*, 449 U.S. at 256–57, 101 S.Ct. at 503 (citation omitted). Charting such a course could cause perpetual insecurity on the part of employers, for, unlike the giving of notice—a matter that is subject to objective verification—the time when an employee suspects an employer's

---

4. Of course, it might be argued that a subtle change in circumstances occurred on November 27, when appellant, for the first time, learned that his suspension did not rise and fall with the outcome of the criminal charges. But appellant has not cited November 27 as the trigger date, and, moreover, appellant's suit, measured from that date, would still be out of time. For these reasons, it would serve no useful purpose to explore this possibility.

discriminatory animus is almost impossible to verify, especially since the employer most often will deny that the animus exists at all. We see no basis for importing such uncertainty into the law.

## IV

### Conclusion

We need go no further.[5] "Come what, come may, time and the hour runs through the roughest day." William Shakespeare, *Macbeth*, act I, sc. 3 (1606). Here, appellant allowed too much time to run for too many days before instituting legal action. Because the limitations period had expired, the lower court appropriately granted the defendants' motion for *brevis* disposition.

**Affirmed.**

---

5. Because Morris's claims are time-barred, we take no view of any other possible deficiencies in his case, including the intriguing question of what (if any) damages he may have suffered.