**BORSCHOW HOSPITAL & MEDICAL SUPPLIES, INC., Plaintiff,**

**v.**

**CESAR CASTILLO, INC.; Becton Dickinson and Co., et al., Defendants.**

Civ. No. 90–1177(SEC).

United States District Court, D. Puerto Rico.

April 18, 1995.

Harry E. Woods, Woods & Woods, Hato Rey, PR, for plaintiff Borschow Hosp. & Medical Supplies, Inc.

Edilberto Berrios–Perez, Hato Rey, PR, Luis Fernandez–Ramirez, San Juan, PR, for defendants Cesar Castillo, Inc., Jose Luis Castillo, Umeco, Inc.

Alfonso Miranda–Cardenas, San Juan, PR, Donald R. Ware, Foley, Hoag & Eliot, Boston, MA, for defendants Beckton Dickinson & Co., Rafael Zapata, Rita Zapata, Rafael Seijo, Roberta Seijo.

Alfonso Miranda–Cardenas, San Juan, PR, for defendant Ken Dooley.

Edilberto Berrios–Perez, Hato Rey, PR, for defendants Alice Castillo, Carlata Castillo, Betty Castillo.

Angel R. De–Corral–Julia, San Juan, PR, for defendants Conrado Abruna, Zoraida Rodriguez–De–Lopez, Emilio Lopez–Figueroa, Teresa Noy–De–Bernstein, Boris Bernstein, Nilsa Lopez–De–Abruna, Elizabeth Bermudez–De–Lopez.

Jesus M. Rivera–Arvelo, Angel R. De–Corral–Julia, San Juan, PR, for defendant Jose Raul Lopez–Colon.

## OPINION AND ORDER

CASELLAS, District Judge.

In this action, plaintiff Borschow Hospital & Medical Supplies, Inc. ("Borschow"), alleges that in May 1985 Becton Dickinson's predecessor, Parke Davis & Company ("Parke Davis") entered into a distribution agreement with plaintiff whereby plaintiff was appointed as the exclusive distributor of a line of products manufactured by Deseret Medical, Inc. ("Deseret"), a subsidiary or division of Parke

Davis. Plaintiff alleges that Becton Dickinson assumed Parke Davis' obligations under the distribution agreement, and that it thereafter terminated plaintiff's right of exclusivity in violation of the Puerto Rico Dealers Act, commonly known as Law 75, 10 L.P.R.A. § 278. Although plaintiff's complaint includes additional elaborate claims against Becton Dickinson and several codefendants ranging from alleged violations of antitrust laws to violations of the RICO Act, all claims have their genesis in Becton Dickinson's decision, in November 1989, to offer the Deseret line of products to two additional distributors in Puerto Rico, as part of an effort to expand its presence in the Puerto Rico market. On January 15, 1991, Becton Dickinson filed a motion for summary judgment on the grounds that the pleadings, depositions, and affidavits on record showed there was no genuine issue as to the facts material to the exclusivity issue. Specifically, Becton Dickinson asserted that under the express terms of the distribution agreement, plaintiff was appointed a "nonexclusive" distributor. Consequently, it reasoned, any parol evidence offered by plaintiff in an attempt to contradict the express terms of the agreement is barred by the parol evidence rule.

By order of the Court, Becton Dickinson's motion for summary judgment was referred to a magistrate judge, along with plaintiff's opposition thereto (docket # 114), Becton's Reply (docket # 130), and plaintiff's Response (docket # 133), for a Report and Recommendation. In his Report and Recommendation, the magistrate judge acknowledged the fact that the distribution agreement contains a clause which "clearly establishes that the contract is nonexclusive." Notwithstanding said clause, the Magistrate, noting that section 9.10 of the agreement provided for subsequent amendments to the contract, considered a two-page document filed by plaintiff as just such an amendment, which clearly established that the distribution contract was exclusive. In addition, the Magistrate relied on deposition testimony and admissions which allegedly showed that the contract was being executed as one for exclusive distribution. Accordingly, the Magistrate recommended that Becton's motion for summary judgment be denied.

On November 23, 1993, after considering Becton Dickinson's objections to the Magistrate's recommendation, the Court, Acosta, J., adopted the same, and denied the motion for summary judgment. Thereafter, Becton Dickinson filed a motion requesting that the Court certify its order of November 23, 1993 for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), or in the alternative, for a reconsideration of the Court's ruling (docket # 184). Before Becton Dickinson's motion for certification/reconsideration could be ruled upon, however, Judge Acosta assumed senior status, and the case was eventually transferred to the undersigned's docket. As a result, the motion is now properly before us, and the parties agree that the matter is ripe for disposition by this Court. Accordingly, we decline to certify the matter for an interlocutory appeal, and instead proceed to a reconsideration of the Court's order denying Becton Dickinson's request for summary judgment.[1]

 The familiar purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). According to Fed.R.Civ.P. 56, a summary judgment motion should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law. *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine", there must be sufficient

---

1. Our authority to reconsider such interlocutory rulings is well established. *See e.g., Barrow v.* *New Orleans S.S. Ass'n*, 10 F.3d 292, 296 n. 9 (5th Cir.1994).

evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992). *See also, Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989). "By like token, 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994).

■ Moreover, this Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684. Cognizant of the above cited standard, we turn now to the merits of the parties' contentions, to assess whether summary judgment is appropriate as a matter of law. We find that it is.

■ As noted above, the Magistrate in his Report and Recommendation recognized that the distribution agreement at issue in this case clearly established that the supplier-distributor relationship between the parties was to be maintained on a nonexclusive basis. Nevertheless, the Magistrate found that a two-page document filed by plaintiff as an exhibit, had the effect of amending the agreement to provide that the relationship would be exclusive. The document in question is in essence a two-page outline, itemizing the respective obligations of the supplier and the distributor under an unidentified "agreement". Admittedly, point number two under the section titled "Obligations of the SUPPLIER" does provide that the supplier is bound to sell exclusively to the distributor,

and must refrain from selling to other distributors or clients "in the territory".[2] Significantly however, the document is not signed or dated. It does not make any specific reference to the agreement entered into by Parke Davis and Borschow on May 1, 1985, and does not form part of said agreement. Moreover, it contains absolutely no indication of even the approximate date it was drafted.

In contrast, the agreement between Parke Davis and Borschow is unambiguous in its terms. Section 2.1.2 of said agreement expressly states that Borschow is appointed as a "nonexclusive independent distributor" of the company's products during the term of the agreement. More importantly, having envisioned the potential need for periodic amendments to the agreement, the parties set forth explicitly in section 9.10 their understanding that "no agreement or understanding varying or extending th[e] Agreement will be binding upon either Party hereto unless in writing, wherein this Agreement is specifically referred to, and signed by duly authorized officers or representatives of the respective Parties." Plainly, the two-page document which Borschow now offers as an amendment to the parties' original agreement satisfies none of the above enumerated requirements, except that it is "in writing". As noted above, it is not signed or dated, nor does it specifically refer to the agreement of May 1, 1985, between Parke Davis and Borschow. As such, by the express terms of said contract, the two-page document offered by plaintiff cannot, as a matter of law, constitute an amendment to the distribution agreement appointing Borschow as a nonexclusive distributor of the Deseret line of medical products.

■ Our holding is in line with the decision in *Nike Intern. Ltd. v. Athletic Sales, Inc.,* 689 F.Supp. 1235 (D.P.R.1988). In that case, the Court was faced with a similar controversy involving the terms of a distribution contract within the context of Law 75. We held that where the provisions of the

---

**2.** The document provides in pertinent part:

 II. *Obligations of the SUPPLIER*
 1. [ ...]

 2. Sell exclusively to the DISTRIBUTOR and refrain from selling to other DISTRIBUTORS or clients in the territory while the AGREEMENT is in effect.

contract are unambiguous, its literal terms must be enforced. *Id.* at 1244; 31 L.P.R.A. § 3471. *See also, Mercado–García v. Ponce Federal Bank, F.S.B.,* 979 F.2d 890, 894 (1st Cir.1992) (affirming grant of summary judgment for defendant on the ground that the plain terms of the parties' written agreement cannot be contradicted by parol evidence). Here, we are faced with the argument that we should consider extrinsic evidence of the "true intentions" of the parties, namely the two-page unsigned and undated document and other deposition testimony, in support of plaintiff's contention that Borschow was in fact granted an exclusive distributorship contract for the Deseret line. As in *Nike,* however, the contract between Parke Davis and Borschow is an integrated agreement, therefore no parol evidence is admissible to dispute the parties' intentions as expressed therein. *See* 32 L.P.R.A.App. IV R. 69(B); *Nike,* 689 F.Supp. at 1244. In this regard, paragraph 9.10 of the agreement provides:

> *Integration:* The terms and provisions contained in this Agreement, including all Schedules attached hereto and Company's Standard Terms and Conditions of Sale in effect, from time to time, constitute the entire agreement and is the final expression of intent between the Parties relating to the subject matter hereof and supersede, all previous communications, representations, agreements, and understandings, either oral or written, between the Parties, with respect to the subject matter hereof. No agreement or understanding varying or extending this Agreement will be binding upon either party hereto unless in writing, wherein this Agreement is specifically referred to, and signed by duly authorized officers or representatives of the respective Parties.

When all terms and conditions constituting the true and final intention of the parties have been included in a written agreement, as in this case, the agreement is deemed complete, and no evidence extrinsic to its contents may be considered. *Nike,* 689 F.Supp. at 1244; 32 L.P.R.A.App. IV R. 69(B). As the validity of the distribution agreement itself is undisputed, plaintiff's reference to extrinsic evidence cannot defeat Becton Dickinson's motion for partial sum-

mary judgment, which is grounded upon the express provisions of the agreement.

WHEREFORE, for the reasons set forth above, the Court's Order Adopting Magistrate's Report And Recommendation (docket # 178), dated November 23, 1993 is partially vacated and set aside inasmuch as it denied codefendant Becton Dickinson's motion for partial summary judgment filed on January 15, 1991 (docket # 103). Instead, Becton Dickinson's motion for partial summary judgment (docket # 103) is GRANTED. Partial judgment shall be entered dismissing plaintiff's First Cause of Action against Becton Dickinson under Law 75.

**SO ORDERED.**