# United States Court of Appeals
## For the First Circuit

No. 05-1638

ÁNGEL VILLANUEVA-MÉNDEZ; LUZ IRAIDA HERNÁNDEZ-PÉREZ;
CONJUGAL PARTNERSHIP VILLANUEVA-HERNÁNDEZ,

Plaintiffs, Appellants,

v.

RÁMON L. NIEVES-VÁZQUEZ, in his personal capacity; SAMUEL
GONZÁLEZ, in his official capacity as Executive Director of the
National Parks Company; SAMUEL GONZÁLEZ, in his personal capacity
and in his official capacity as Deputy Director of Facilities of
the National Parks Company; DEFENDANTS X, Y and Z,

Defendants, Appellees.

_____

EDNA PÉREZ-TOLEDO, in her personal capacity and in her official
capacity as Assistant Superintendent of the National Parks
Company; SONIA CANCEL, in her personal capacity and in her
official capacity as Director of Human Resources of the National
Parks Company; NILDA SOTOMAYOR, in her personal capacity and in
her official capacity as Director of Administration of the
National Parks Company.

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Lynch, Circuit Judge.

Rafael A. Machargo for appellants.

Irene S. Soroeta-Kodesh, Assistant Solicitor General, Department of Justice, with whom Salvador J. Antonetti-Stutts, Solicitor General, Mariana D. Negrón-Vargas, Deputy Solicitor General, and Maite D. Oronoz-Rodríquez, Deputy Solicitor General, were on brief for appellees Ramón Luis Nieves-Vázquez and Samuel González, in their personal capacities.

Luis R. Pérez-Guisti with whom Mignucci and Pérez-Giusti PSC was on brief for appellee Samuel González, in his official capacity.

---

March 1, 2006

---

**BOUDIN**, **Chief Judge**.   This is an appeal from the dismissal of a suit by Angel Villanueva-Mendez charging several officials of a Puerto Rico agency with demoting him for politically discriminatory reasons.   Because the matter was resolved in the defendants' favor on summary judgment based on a statute of limitations defense, the facts are recited in the light most favorable to Villanueva.   Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994).

From July 1997 to June 2000, Villanueva, an active member of the New Progressive Party ("NPP"), occupied a trust (i.e., non-career) position in a Puerto Rico government authority now called the National Parks Company.   In June 2000, he became Park Director of the Camuy River Caves Park ("Camuy"), a permanent career position under Puerto Rico law.   In January 2001, after the Popular Democratic Party ("PDP") won the general election, a new PDP governor took office and Ramon Luis Nieves-Vazquez was named Executive Director of the National Parks Company.

On February 20, 2001, Nieves met with Villanueva to discuss a new initiative within the National Parks Company, the creation of a Quality Standards Committee.   There followed a letter to Villanueva, received on February 28 and reading (in translation) as follows:

February 27, 2001

Mr. Angel Villanueva Mendez
Director, Camuy River Caves Park

-3-

SPECIAL ASSIGNMENT

Last February 20, I held a conversation with you regarding the projects that are to be carried out with the creation of the Puerto Rico National Parks Company, specifically, the creation of a Quality Standards Committee.

As per our conversation, and due to service needs, I hereby notify you that effective March 1, 2001, I am assigning you to work in the Quality Standards Committee in the headquarters of Puerto Rico National Parks Trust. You will have flexible working hours.

In order that this assignment not be onerous to you, I am approving a differential amount of $195.00 monthly for the duration of the project. This assignment will not affect your employee status or your monthly salary.

We hereby notify you that you are entitled to appeal the foregoing assignment within thirty (30) days of receipt of this letter if you think that your rights have been violated.

We expect your usual collaboration.

Sincerely,

[signature]
Ramon Luis Nieves, Esq.
Executive Director

Starting March 1, 2001, Villanueva began traveling to the National Parks Company's central offices in San Juan three days a week, to attend to the duties of his new assignment. On March 9, he suffered a work-related accident that kept him away from work until May 18. While on leave, Villanueva sent Nieves a letter, dated March 27 and captioned "APPEAL OF SPECIAL ASSIGNMENT." In

-4-

the letter, Villanueva asked Nieves to "reconsider my assignation to the Quality Standards Committee." He continued:

> I believe that this transfer, disguised as an assignment, . . . violates my rights as a permanent employee of our agency.
>
> In the first place, I am relieved of my duties as Director of the Camuy River Caves Park, without any justification, in order to place another person that has the trust and the political affiliation of the appointing authority. . . .
>
> Therefore, this transfer is not justified, removing me from my place of work, on the grounds that it responds to service needs. The nature of the service need is not stated either. However, I was not assigned functions or duties, either specific or concrete, in the alleged special assignment. . . .

Villanueva concluded by asking "that this situation be corrected" and that he "be reinstated as Director of the Camuy River Caves Park, with all my rights, duties, and prerogatives as a public servant."

Instead, on May 21, 2001, just as Villanueva returned to active duty, Nieves announced a newly-created position within the National Parks Company--"Park Coordinator"--to be filled by Angel Lopez-Lopez. According to Villanueva, the new appointee was "a known PDP activist," and he "was going to be in charge of [Camuy] from that day on." That same day, Villanueva requested a meeting with Nieves and asked him "about this stripping of functions"; Nieves responded (according to Villanueva), "In the past you were

-5-

a confidential employee and you must understand that I have to choose my people."

The next day, May 22, Nieves sent Villanueva a letter describing the tasks that Villanueva "will be performing full-time as part of the Quality Standards Committee." Villanueva sent a letter of his own to Nieves on May 23--their two letters apparently crossed in the mail--appealing "the decision to unlawfully remove me from my functions as the Park Director for the Camuy River Caverns." Referring back to the May 21 meeting at which Nieves announced the appointment of Lopez, Villanueva recalled that

> [a]t that meeting, among other things, you asked me to vacate my office since it was going to be occupied by Mr. Angel Lopez-Lopez, Special Assistant that you were appointing as the Park Director. . . .
>
> On the other hand, you informed me that during two days a week I would be working in San Juan, as part of the job assignment you gave me, and through which you had me direct the Service Quality Standards Committee. In addition, you told me that the rest of the week's work days I'd be reporting to the Camuy River Caverns Park, but that I would be doing the Service Quality Standards Committee work. . . . I asked you to tell me how my functions would be affected by the appointment of Mr. Angel Lopez-Lopez. You pointed out to me that you would let me know subsequently. At the time I write this communication I have not yet been informed anything about it.
>
> I understand that this whole situation[] constitutes an unlawful removal of functions . . . . As Park Director, I was the person in charge of it and the one with the highest hierarchy, I would take care of all matters at the administrative level, working Monday

-6-

through Friday, I had my own office with a secretary, telephone with an access code to make calls through the local switchboard, and also had a direct telephone line available to me. In fact, whenever I traveled to San Juan or other towns, I could make use of an official vehicle with a driver.

This whole new situation that you all have created within the agency, the supposed reorganization that as you told me has not yet been comp[l]eted, has constituted a removal of my functions as the Park Director for the Camuy River Caverns.

Villanueva filed the present law suit, under 42 U.S.C. § 1983 (2000), on May 17, 2002. He alleged that the injury of which he complained occurred on May 21, 2001, when he "was transferred and actually demoted involuntarily while simultaneously keeping just the title of Park Director." The defendants (ignoring three others later dropped from the case) were Nieves and Samuel Gonzalez, who was described in the complaint as the Deputy Executive Director of the National Parks Company. The complaint, later amended in respects not relevant here, also asserted claims under Puerto Rico law.

The defendants moved for summary judgment, asserting that the section 1983 claim--brought on May 17, 2002--had accrued in February or March 2001 and so was barred by the applicable Puerto Rico one-year statute of limitations. It is common ground that the Puerto Rico one-year period applies,[1] but federal law determines

_____

[1]Federal law borrows the local statute, Morris, 27 F.3d at 748 (citing Wilson v. Garcia, 471 U.S. 261, 269 (1985)), and the

the starting (or accrual) date, Morris, 27 F.3d at 748. Accrual commences, for federal law purposes, when a plaintiff "knows, or has reason to know, of the discriminatory act that underpins his cause of action." Id. at 749 (citing Chardon v. Fernandez, 454 U.S. 6, 8 (1981)).

The district court agreed with the defendants that Villanueva's federal claim accrued "at the latest[] on February 28, 2001 when he received the letter informing him of his new assignment." The court dismissed the federal claim as barred by the statute of limitations and dismissed somewhat different claims under Puerto Rico law without prejudice. See 28 U.S.C. § 1367(c)(3) (2000). Villanueva now appeals, and our review is de novo, drawing inferences in his favor. Morris, 27 F.3d at 748.

At the outset, it is worth noting that Villanueva may not be protected against "political discrimination" at all. Supreme Court doctrine, creating such a constitutional claim under the aegis of the First Amendment, distinguishes between positions for which political affiliation is a legitimate requirement (policymakers, confidential assistants, and so on) and those for which it is not a permissible basis for hiring or dismissal. See Branti v. Finkel, 445 U.S. 507, 518 (1980); Elrod v. Burns, 427

---

applicable limitations period in Puerto Rico is one year, P.R. Laws Ann. tit. 31, § 5298 (2002); see also Morris, 27 F.3d at 748.

U.S. 347, 372 (1976); see also Flynn v. City of Boston, 140 F.3d 42, 44-46 (1st Cir.), cert. denied, 525 U.S. 961 (1998).

Save at the ends of the spectrum, whether a position is immune to "political discrimination" is often debatable, dependent on a host of variables; but there is also an inclination to have the judge resolve the issue based primarily on the official description of the position's duties. See Duriex-Gauthier v. Lopez-Nieves, 274 F.3d 4, 8 (1st Cir. 2001). In all events, the question is resolved under federal constitutional standards; that a claimant may be a trust employee under Puerto Rico law or instead have civil service protection (as Villanueva does) is not decisive as to the 1983 claim, id., although claims under Puerto Rico law turn on the trust/career distinction.

Villanueva, as Camuy park director, was likely performing executive functions in some degree; but we have been given no position description and furnished with few details. Nor have the defendants moved for summary disposition of Villanueva's claim on this ground. At the same time, our decision does not rest on any implicit assumption that Villanueva is entitled to constitutional protection; rather, it is an open question which, having not been raised, is also not here resolved.

We turn, then, to the statute of limitations which the district court found to bar Villanueva's federal claim. Standing alone, Nieves' original assignment of Villanueva to the Quality

Standards Committee is ambiguous in two respects: as to duration and, more important, as to whether it terminated Villanueva's position as Camuy park director. Even after the events of May 2001, Villanueva concedes that his formal status and pay remained that of a "director," but whether this designation refers generally to "rank" in the civil service hierarchy or to the office of Camuy park director is a different matter.

Unfortunately for Villanueva, his March 27, 2001, letter says: "In the first place, I am relieved of my duties as Director of the Camuy River Caves Park, without any justification, in order to place another person that has the trust and the political affiliation of the appointing authority." It goes on to request that "I . . . be reinstated as Director of the Camuy River Caves Park, with all my rights, duties, and prerogatives as a public servant."

These statements by Villanueva reflect a recognition that, as of March 2001, he had been ousted as Camuy park director and that his replacement was or would be a political appointee. This did not mean that his special assignment was permanent; but he had no apparent reason to think that, at its end, the new administration would remove his political replacement and reinstate him as Camuy park director. So Villanueva certainly knew enough in March 2001 to bring a political discrimination claim for his ouster.

The letter's powerful inference of knowledge might have been countered, if the facts so permitted, by a counter-showing from Villanueva that he had nevertheless in fact been allowed to continue his duties as Camuy park director until the events of May 2001. Yet he says himself that he was excluded after February 2001 from travel and training that were customarily part of a park director's role. Beyond this, we know only that he spent several days a week at the Camuy park facilities and, seemingly, retained until May his original office space and certain perks (e.g., a chauffeured car).

In a legal filing with the district court, Villanueva said that he was "still officially performing two days a week his functions as Park Director" until May 2001. But his only citation for this statement is to factual allegations in the complaint which neither directly support the inference nor carry weight once the issue has been posed on summary judgment by evidence proffered by the opponent. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994).

Thus, the only direct evidence before the district court was Villanueva's own letter indicating that by March 2001 at the latest, he knew he had been effectively supplanted as Camuy park director in favor of someone who, in the eyes of the new administration, had stronger political credentials. The time to

-11-

bring a section 1983 claim on this ground was within one year of February or March 2001. Villanueva did not do so and his federal claim is therefore barred.

There is not much else to say. Villanueva argues that a claim based on the special assignment that occurred in February 2001 would not automatically bar a separate claim for his removal as Camuy park director in May, or that the latter should be viewed as part of a "continuing violation." This might well work if his removal dated only from May 2001; but his letter, as already pointed out, complains of his removal--not just his special assignment--in March 2001.

Villanueva also complains of the district court's failure to act on his opposition to a defendant's request for a stay of discovery; but, as the stay was not granted, how the failure to act hurt Villanueva's claim is not apparent and never explained. At oral argument his counsel said that Villanueva had himself sought further discovery; but a look at his request under Fed. R. Civ. P. 56(f) indicates that this request for additional discovery related to an alternative qualified immunity defense, which the district court never reached.

Affirmed.