Edwin OTERO–BURGOS,
et al., Plaintiffs

v.

INTERAMERICAN UNIVERSITY,
et al., Defendants.

Civil No. 04–1301(SEC).

United States District Court,
D. Puerto Rico.

Dec. 5, 2006.

Charles S. Hey–Maestre, De Jesus, Hey & Vargas Law Office, Manuel Moraza–Choisne, Manuel E. Moraza–Ortiz, Moraza & Munoz, San Juan, PR, for Plaintiffs.

Amancio Arias–Guardiola, Arias Cestero & Arias Guardiola, Lorraine Juarbe–San-

tos, Interamerican University of Puerto Rico, San Juan, PR, for Defendants.

## OPINION AND ORDER

SALVADOR E. CASELLAS, District Judge.

Pending before the Court are Defendants' Motion Requesting Reconsideration on Denial of Motion for Summary Judgment (Docket # 117) and the opposition thereto (Docket # 130), and Plaintiffs' Motion to Set Aside Judgment Pursuant to Federal Rules of Civil Procedure 59 and/or 60 (Docket # 121) and Defendants' opposition thereto (Docket # 125).[1] After reviewing the filings, and the applicable law, for the reasons stated below, Plaintiffs' motion will be **GRANTED** and Defendants' motion will be **GRANTED in part and DENIED in part.**

### Factual and Procedural Background:

A more detailed backgrounds is set forth in our Opinion and Order of August 25, 2006 (Docket # 114). In that opinion the Court granted in part and denied in part Defendants' motion for summary judgment. Plaintiffs' Law 100 claim was dismissed as time-barred because they failed to produce the evidence to support their contention that the final decision to dismiss Co-plaintiff Otero–Burgos (hereinafter Otero–Burgos) was made within the applicable statute of limitations.[2] The

Court denied entering summary judgment as to the breach of contract claim because "there was a triable issue of fact as to the reason for initiating the dismissal procedure against Co-plaintiff Otero–Burgos and whether there was a cause to terminate his contract with the IAU". Docket # 114, p. 12.

On September 8, 2006 Defendants filed a motion to reconsider the Court's decision to deny summary judgment as to Plaintiffs' breach of contract claim (Docket # 117), reiterating the unsuccessful argument that there had been no breach of contract because the IAU complied with the procedures established in the Faculty Manual for the dismissal of a tenured professor. Defendants further contended that, in finding that there were issues of fact as to whether there was just cause for the dismissal, the Court substituted the judgment of "unbiased" faculty members for its own, in violation of the rule of deference to higher education institutions' decisions. *See,* Docket # 117, p. 7.

In the alternative, they averred that Plaintiffs' breach of contract claim was precluded by the Commonwealth's Act 80, 29 P.R. Laws Ann. § 146 et seq (hereinafter Act 80), which provides an exclusive remedy to an employee seeking redress for an alleged unjust dismissal.[3] Consis-

---

1. Defendants also filed a reply to Plaintiffs' opposition (Docket # 134) and Plaintiffs sur-replied (Docket # 136).

2. Defendants argued in their motion for summary judgment (Docket # 57) that Plaintiffs' Law 100 claim was time-barred because more than one year had elapsed from the date that Co-plaintiff Otero–Burgos was dismissed (March 6, 2003) to the date when the instant complaint was filed (April 8, 2004). In their surreply (in the summary judgment stage, Docket # 108, p. 10), Plaintiffs contested the date of dismissal stating that Co-defendant Interamerican University's (hereinafter IAU)

final decision to dismiss Otero–Burgos was made in June 25, 2003. They argued that the Law 100 claim started to accrue on that date, so that the complaint was filed within the statute of limitations. Our previous Opinion and Order disregarded this argument because it was unaccompanied by supporting evidence. *See,* Docket # 114, p. 13.

3. Although Defendants made a vague mention of Act 80 in their Motion for Summary Judgment (Docket # 54), they did not develop a legal argument, nor referred the Court to any case law that supported their contention.

tent with this reasoning, Defendants threaded a tripartite argument: (1) that if Plaintiffs were to prove that Otero–Burgos' termination was unjust, the only available compensation under Act 80 would be a salary allowance which would be calculated on the basis of Otero–Burgos' years of service with the IAU, (2) that such amount would be substantially lower than the jurisdictional amount ($75,000) required by 28 U.S.C.A. 1332, thus depriving the Court of jurisdiction and, (3) that even if the Court concluded that Plaintiffs' damages could be greater than the jurisdictional amount, the Court should dismiss the Act 80 claims against the individual defendants because only the employer can be held liable under such law.

Finally, Defendants asked the Court to dismiss Plaintiffs' claims under Art. 1802 and 1803 of the Puerto Rico Civil Code, because they are derivative of Plaintiffs' Law 100 claim, dismissed by the Court in the August 26 opinion.

Plaintiffs opposed to Defendants' motion for reconsideration (Docket # 130) arguing, in essence, that in *Selosse v. Fundación Ana G. Méndez,* 122 D.P.R. 534 (1988)(hereinafter *Selosse* ), the Puerto Rico Supreme Court (hereinafter the P.R. Supreme Court) held that whenever there was a manual governing the employment relationship and the procedures related thereto, such manual was a contract between the employer and the employee, and any violation would result in a breach of contract enforceable under Art. 1044 of the Puerto Rico Civil Code. They believe this remedy is independent from the one provided by Act 80. Plaintiffs further alleged that the cases cited by Defendants for the proposition that Act 80 was an exclusive remedy were distinguishable from the case at bar, since none of those cases dealt with the dismissal of a tenured professor.

On the other hand, Plaintiffs also filed a motion to reconsider the Court's dismissal of their Law 100 claims as time-barred (Docket # 121), which was founded on Plaintiffs' failure to support the fact that the IAU's President upheld Otero–Burgos' dismissal in June 25, 2003 and that it was then that their claims started to accrue. This time they included the letter sent by Mr. Fernós to Otero–Burgos as an exhibit to their motion. Accordingly, they ask the Court to set aside its judgment and restore their Law 100 claims.

Defendants opposed to Plaintiffs' motion (Docket # 125) and submitted that, in accordance with *Morris v. Government Development Bank,* 27 F.3d 746 (1st Cir.1994)(hereinafter *Morris* ), the date of accrual was March 6, 2003, when the termination decision was taken, and not June 25, 2003, when Mr. Fernós merely refused to reconsider that decision. We address the parties' arguments concurrently.

**Standard of Review:**

FED.R.CIV.P. 59(e) allows a party, within ten (10) days of the entry of judgment, to file a motion seeking to alter or amend said judgment. The rule itself does not specify on what grounds the relief sought may be granted, and courts have ample discretion in deciding whether to grant or deny such a motion. *Venegas–Hernández v. Sonolux Records,* 370 F.3d 183, 190 (1st Cir.2004) (citations omitted). In exercising that discretion, courts must balance the need for giving finality to judgments with the need to render a just decision. *Id., citing, Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 355 (5th Cir.1993). Despite the lack of specific guidance by the rule on that point, the First Circuit has stated that a Rule 59(e) motion "must either clearly establish a manifest error of law or must present newly discovered evidence". *F.D.I.C. v. World Univ., Inc.,* 978 F.2d 10, 16 (1st Cir.1992),

quoting, *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). Rule 59(e) may not, however, be used to raise arguments that could and should have been presented before judgment was entered, nor to advance new legal theories. *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 72 (1st Cir.2003).

## Applicable Law and Analysis

The motions by the parties set forth three main issues: (1) whether Plaintiffs' Law 100 and Art. 1802 and 1803 claims are time-barred or should be restored in light of the new evidence provided by Plaintiffs, (2) whether Plaintiffs' allegations that the IAU failed to follow the Faculty Manual's procedures regarding dismissals of tenured professors must be construed as setting forth a cause of action under Act 80, thereby precluding a breach of contract claim; and, in the event Act 80 applies, (3) if jurisdiction is lacking for failure to meet the jurisdictional amount required by the diversity jurisdiction statute. We analyze each separately.

*Law 100 & Art. 1802 and 1803 claims*

As stated above, Plaintiffs believe the date of accrual of their Law 100 claim was the date of the University President's confirmation of Otero–Burgos' termination. Defendants disagree and call the Court's attention to the First Circuit's holding in *Morris*. In that case, the First Circuit concluded that "the rule in an employment discrimination case is that the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act. [That is] when the employee learns of the adverse employment action. [This moment will normally be] when the employer's decision is made and communicated to the affected employee." *Morris*, 27 F.3d. at 749–50. *Morris*, notwithstanding, we agree with Plaintiffs. Let's see.

■ Although the Court is bound by the First Circuit's decisions, the *Morris* case is distinguishable from the instant case. The plaintiffs in *Morris* sought redress under 42 U.S.C.A § 1983, opening the doors to the federal courtroom by means of federal question jurisdiction. On the contrary, Plaintiffs' complaint in this case is based exclusively on state law claims; federal jurisdiction rests on the diversity of the parties. The distinction is determinative. It is well settled law that in diversity cases, state law, rather than federal law, applies to disputes regarding the substantive rights of the parties. *See, Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 112, 65 S.Ct. 1464, 89 L.Ed. 2079 (hereinafter *Guaranty Trust*)(holding that "the source of substantive rights enforced by a federal court under diversity jurisdiction ... is the law of the States"). *See also, U.S.A. v. International Business Machines Corp.*, 110 F.Supp.2d 395, 402 (D.Md.2000)(holding that "there is a difference between choice of law rules pertaining to statutes of limitations as they apply in actions in federal courts based on state causes of action [that is, diversity cases] and those that apply in actions in federal courts to enforce federally created rights ... In the former, the forum state's choice of law rules must be applied.") Under Puerto Rico law "the statute of limitations is a rule of substantive law that represents a way of extinguishing a right as a result of its holder's inaction during a specified period of time." *González Natal v. Merck, Sharp & Dohme Química*, 2006 T.S.P.R. 2, 20 n. 12. (citations omitted)(our translation). Given the fact that this is a diversity case, and that under Puerto Rico law the statute of limitations is a rule of substantive law, Puerto Rico law governs the dispute regarding the timeliness of Plaintiffs' Law 100 claims, as well as the deriva-

tive claims under Art. 1802 & 1803 of the Puerto Rico Civil Code.

Since the P.R. Supreme Court has already faced an identical controversy, resolution of this dispute is straightforward. On *Ríos v. Adm. Servicios Agrícolas*, 140 D.P.R. 868 (1996)(hereinafter *Ríos*), the defendants argued that plaintiffs' complaint was time-barred because it was filed 1 year and 14 days following the defendant's decision to terminate co-plaintiff Rosa Ríos (Ríos). The plaintiffs argued that, instead of the initial date of termination, their cause of action accrued when the employer confirmed Ríos' dismissal following her request for reconsideration. The P.R. Supreme Court agreed with plaintiffs and concluded that "it was ... upon [Defendants'] ratification of the transfer decision, that the decision became final, and it is from the date of notification of that final decision that the statute of limitations starts to accrue." *Id.*, at p. 872.

■ Following the holding in *Ríos*, it is apparent that Plaintiffs' Law 100 claim is not time-barred. The date of accrual of Plaintiffs' claim is June 24, 2003, when President Fernós confirmed Otero–Burgos' termination, giving finality to the IAU's decision. Since the complaint in this case was filed on April 8, 2004, it was filed within the period of time allowed for this type of actions. *See, Matos Molero v. Roche Products, Inc.*, 132 D.P.R. 470, 474 (1993). Therefore, Plaintiffs' motion to set aside the judgment entered by the Court in Docket # 115 is hereby **GRANTED** and their claims under Law 100 **RESTORED.** Because, as Defendants themselves recognized, the Art. 1802 and 1803 claims must suffer the same fate as the Law 100 claim, they too survive summary judgment.[4] Consequently, Defendants' motion for reconsideration, as it pertains to these claims, is **DENIED.**

*Breach of contract claim vs. Act 80 and responsibility thereunder*

As explained above, Defendants' arguments in their motion for reconsideration are (1) that there was no breach of contract claim because the IAU followed the Faculty Manual, (2) that the Court, in concluding that there were triable issues of facts, impermissibly substituted the IAU's decision to terminate Otero–Burgos for its own, violating the doctrine of deference developed in cases involving employment disputes between a university and its professors, and, finally, (3) that Plaintiffs' breach of contract claim is precluded by Act 80. Let's see.

Defendants' first argument was already considered and rejected by the Court. We see no reason, on reconsideration, to depart from our previous ruling. Accordingly, we move on to Defendants' remaining arguments.

Defendants' contention that the Court impermissibly substituted the IAU's judgment for its own has already proved unsuccessful. In *Selosse*, a professor was denied tenure after the pertinent internal procedures, which apparently were tainted with an animus toward her from the Institute Director, who recommended that the Committee not grant her tenure. The P.R. Supreme Court in that case acknowledged that "courts may not engage in 'second-guessing' the University authorities in

---

4. The Puerto Rico Supreme Court has decided that relatives of an employee discriminated against by the employer have an independent cause of action under Art. 1802 of the Puerto Rico Civil Code. *See, Santini v. Serv. Air Inc.*, 137 D.P.R. 1, 6 (1994). Since their causes of action are dependant on Otero–Burgos' Act 100 claim, Defendants, relying on our previous ruling regarding such claim, argue that the Art. 1802 derivative claims should be dismissed as well.

connection with faculty promotions ... [because they] are not qualified to review and substitute their judgment for these subjective, discretionary judgments of professional experts ... or to engage independently in an intelligent informal comparison of the scholarly contributions or teaching talents of [faculty members]." *Id.*, at p. 513(citations omitted). Nonetheless, the Court immediately ruled out that

> "this cautious and prudent treatment [would] hinder judicial scrutiny ... especially in situations dealing with the interpretation of a contract. **The mere fact that a university is involved in a contractual controversy does not suffice to invoke the judicial self-restraint rule; if we did, then, for all practical purposes, we would be favoring *a priori* one of the contracting parties."** *Id.*(emphasis added).

According to the holding of *Selosse*, Defendants' argument that the Court should show deference to the IAU's decision to terminate Otero–Burgos by not allowing the issue of whether it followed the Faculty Manual's procedures to go to trial, is also without merit.

Notwithstanding the above, Defendants' argument that Act 80 creates an exclusive remedy in cases like the instant one (thus precluding Plaintiffs' breach of contract claim) is meritorious. Although the P.R. Supreme Court in *Selosse* chose to enforce the contract between the university and the plaintiff, the facts underlying that complaint and the remedies sought by the plaintiff were distinguishable from those present in the instant case. In *Selosse*, the plaintiff claimed that the procedure followed by the university in determining

that she was not entitled to tenure did not comply with the university's manual. The P.R. Supreme Court concluded that because there was no state action, plaintiff was not entitled to a due process claim, but that this "does not mean that professors at private universities are deprived of their right to be heard. These safeguards can also be developed through their incorporation in [tenure] contracts." *Selosse*, 122 D.P.R. at p. 511, 1988 WL 580750. In that context, and in light of the facts of that case, the P.R. Supreme Court decided that the university's manual was part of the contract between the plaintiff and the university and that, according to Art. 1044 of the P.R. Civil Code, the university was bound to follow the procedures set forth therein.[5] *See*, 122 D.P.R. at pp. 548–49, 1988 WL 580750. Accordingly, it ordered the university to comply with the procedure designed in the manual to grant or deny tenure to the university's professors. *Id.*, at p. 552, 1988 WL 580750.

As we read *Selosse*, the plaintiff's complaint therein, alleged that she was **denied tenure** without just cause, in violation of the faculty manual, and prayed the court to order the university to comply with the manual. Plaintiffs in this case allege that Otero–Burgos was **discharged** without just cause and request that the Court enforce the contract, order the IAU to reinstate Otero–Burgos, and pay plaintiffs compensatory damages. The distinction is important. An unjust discharge lies within the ambit of Act 80; a denial of tenure does not.

 Act 80 protects employees that are hired without a fixed time by any type of employer from being discharged without

---

5. The P.R. Supreme Court noted that the university did provide plaintiff with the opportunity to argue her entitlement to tenure in a hearing, as required by the faculty manual, but also noted that the university notified her of such hearing with only a day in advance. Therefore, the P.R. Supreme Court concluded that the hearing was pro forma and that plaintiff's "fate was pre-determined". *See*, *Selosse*, 122 D.P.R. at p. 551.

just cause. Its purpose was to "protect worker's tenure in their jobs, and [the lawmakers'] interest in discouraging unjust discharges." *See, Vélez Rodriguez v. Pueblo Intl.,* 135 D.P.R. 500, 510 (1994)(hereinafter *Vélez* ).[6] Therefore, Act 80 was enacted in an effort to "strike a balance between the freedom of choice inherent to an employer and the social need to do away with arbitrary terminations of employment." *Vargas v. Royal Bank of Canada,* 604 F.Supp. 1036, 1036 (D.P.R.1985)(*quoting, Secretario Del Trabajo v. I.T.T.,* 108 D.P.R. 536, (1979)). Notwithstanding the protection afforded by Act 80, the remedy available for a violation thereof is quite limited. The compensation under the Act comprises a salary allowance calculated on the basis of the years of service rendered by the unjustly discharged employee, and "is the **exclusive remedy for unjust discharge.**" *Vélez,* 135 D.P.R. at p. 511, 1994 WL 909576.(our emphasis). *See also, Martínez v. ACANA Corp.,* 2002 T.S.P.R. 110, at p. 4(hereinafter *Martínez* )(holding that if plaintiff was unable to prove that her dismissal was due to discrimination, her only remedy would be an unjust dismissal claim under Act 80)(our emphasis); *Hernández Barreto v. ITT World Directories, Inc.,* 62 F.Supp.2d. 387, 395 (D.P.R.1999)(dismissing plaintiff's breach of contract claim because Act 80 provided an exclusive remedy for unjust dismissal)(our emphasis). Not even reinstatement is available to the employee under the Act. *See, Rivera v. Security,* 106 D.P.R. 517, 527 (1977); *see also, Vargas v. Royal Bank of Canada,* 604 F.Supp. 1036, 1040 (D.P.R.1985).

In spite of the cases discussed above, Plaintiffs argue that, in light of *Selosse,* the remedy available to tenured professors is ampler than the one available to other employees. But, as stated above, the facts in *Selosse* were different from the ones now before us, and, therefore, *Selosse* is of limited precedential value in this case. Furthermore, the cases following *Selosse* are completely inapposite to Plaintiffs' proposition.

In *Biver v. Cooperativa Federal De Empleados Telefónicos,* 145 D.P.R. 165 (1998)(hereinafter *Biver* ), the P.R. Supreme Court was faced with a situation similar to the one in *Selosse.* The plaintiff in *Biver* was a cashier who had completed successfully the probationary period set forth in the company's manual and was later summarily dismissed by the defendant. The plaintiff argued, as do the Plaintiffs in this case, that his employer did not follow the procedures contained in the company's manual and, therefore, was entitled to ask the court to enforce the contract. The P.R. Supreme Court, however, held that the employee's only remedy was the one provided by Act 80 for unjust discharge, which precluded a breach of contract claim. *Id.,* at p. 168, 1998 WL 199601. In a reasoning far removed from *Selosse,* it concluded that "the employer's noncompliance with its internal manual in terminating an employee, normally, would only have the consequence of turning that termination into an unjustified one. . . . [Accordingly], a person dismissed in a way incompatible with the privileges provided by the employer in the Employment Manual, is only entitled to compensation under Act 80." *Id.* (our translation)(our emphasis)(*quoting, Santiago v. Kodak Caribbean, Ltd.,* 129 D.P.R. 763 (1992)). *See also, Vélez v. Pueblo International, Inc.,* 135 D.P.R. 500, 511 (D.P.R.1994)(stating that "[t]he compensation provided by the law is

---

6. The Act sets forth the circumstances under which a discharge is deemed just and the worker will not be entitled to the remedy provided by the Act. *See,* 29 Laws of P.R. Ann. § 185(b).

the exclusive remedy for unjust discharge.")

■ Per the discussion above, we do not believe that the P.R. Supreme Court in *Selosse* created an exception to Act 80's exclusive remedy in cases of unjust discharge. As such, we conclude that Plaintiffs' breach of contract claim is precluded by Act 80. *See, Virapen v. Eli Lilly, S.A.,* 793 F.Supp. 36 (D.P.R.1992)(stating that the court does not read *Selosse* as creating an exception to Act 80's preclusive effect). Therefore, Plaintiffs' allegations that Otero–Burgos' termination was unjust, if proven, would only entitle Otero–Burgos to a salary allowance under 29 P.R. Laws Ann. § 185(a).

This does not mean that Plaintiffs' only remedy is that included in Act 80. Plaintiffs now have available a Law 100 claim (and the derivative tort claims under Art. 1802 of the P.R. Civil Code). The P.R. Supreme Court has recognized that the exclusiveness of the remedy provided by Act 80

"does not extend to other specific situations in labor matters where the worker is protected by special social legislation. In these cases, the remedy provided is superior to the one available to the worker discharged without just cause ... If it should occur, the remedy, as a rule, is reinstatement, back pay and, in some cases, damages stemming from the discharge and, in certain cases, an equal sum as penalty." *Vélez,* 135 D.P.R. at pp. 512–513, 1994 WL 909576;(our emphasis) *See also, Martínez,* 2002 T.S.P.R. 110, at p. 4, 2002 WL 1973927 (holding that if plaintiff was unable to prove that her dismissal was due to dis-

crimination, her only remedy would be an unjust dismissal claim under Act 80).

■ We now turn to Defendants' argument that the individual defendants are not liable under Act 80. They are right. *See, Mandavilli v. Norman I. Maldonado,* 38 F.Supp.2d 180, 205 (D.P.R.1999)(holding that since the exclusive remedy under Act 80 is wages, impeding employees from asking for any other type of damages, it would make no sense to have a supervisor liable to the employee)(*quoting, Flamand v. American Int'l. Group, Inc.,* 876 F.Supp. 356, 364 (D.P.R.1994)). Therefore, Plaintiffs' claims for unjust discharge against the individuals defendants are hereby **DISMISSED WITH PREJUDICE.**

The individual defendants remain in the suit, however, as they could be held liable under the provisions of Law 100. *See,* 29 P.R. Laws Ann § 151; *see also, Rosario v. Distribuidora Kikuet, Inc.,* 151 D.P.R. 634, 643 (2000).

*Lack of Jurisdictional amount*

■ Defendants' last argument is that jurisdiction is lacking because Plaintiffs' damages under Act 80[7] would be substantially lower than the $75,000 required in cases under diversity jurisdiction. 28 U.S.C.A. § 1332. Defendants' argument, however, is founded upon the Court's dismissal of Plaintiffs' Law 100 claims in the August 26 opinion. Because we are restoring Plaintiffs' Law 100 claims and the derivative causes of action under Art. 1802 of the P.R. Civil Code, Defendants' argument is moot. If Plaintiffs prove that the IAU's termination of Otero–Burgos was due to age discrimination, Otero–Burgos

---

**7.** Act 80 provides that an employee under contract without a fixed time, who is discharged from his employment without good cause shall be entitled to a compensation allowance to be computed depending on the employee's salary and years of service at the time of dismissal. The maximum to be recovered is 3 months of salary when the termination occurs after 15 years of service plus a week of salary for each year of service.

would be entitled to all the damages caused by the termination (including lost earnings and mental anguish), as proven during trial, plus an equal amount as penalty, as provided by 29 P.R. Laws Ann. § 146. *García Pagán v. Shiley Caribbean,* 122 D.P.R. 193, 201 (1988).[8] Because Plaintiffs have asked for damages amounting to more than $75,000, and Defendants have not met their burden of establishing either that their claim is not done in good faith or that there is legal certainty that Plaintiffs could not obtain an award in damages greater than $75,000, their argument of lack of jurisdictional amount cannot prevail. *See, St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845, (1938).

**Conclusion:**

For the reasons set forth herein, Plaintiffs' motion to set aside judgment (Docket # 121) will be **GRANTED** and Defendants' motion for reconsideration (Docket # 117) will be **GRANTED in part and DENIED in part.** Accordingly, the Court's Partial Judgment of August 25, 2006 (Docket # 115), is **SET ASIDE,** and Plaintiffs' law 100 claim is hereby **REINSTATED.** Plaintiffs' breach of contract claim is further **DISMISSED WITH PREJUDICE.** The Court will give Plaintiffs until **December 15, 2006,** to amend their complaint to include the Act 80 claim for unjust discharge, in accordance with this opinion. The parties are reminded that a Pretrial and Settlement Conference has been set for **December 6, 2007 at 4:00 p.m.** and that, according to the Scheduling Order

issued by the Court on December 11th, 2004 (Docket # 25), counsel should come to said conference prepared to discuss the possibility of settlement and must "have their clients available by telephone for immediate consultation during the Conference." *Id.,* at p. 6. A partial judgment will be entered accordingly.

**SO ORDERED.**

---

8. Defendant's argument will fail, even if this Court denied Plaintiffs' motion to set aside the judgment regarding to the reinstatement of the Law 100 claims, and the only available remedy was that provided by Act 80. According to 29 P.R. Laws Ann. § 185(a), because Co-plaintiff Otero–Burgos was terminated when he had completed 29 years of service,

he would be entitled to 3 months of salary, plus a week salary for each year of service. This compensation would amount to $134,889, according to the salary amount provided by Defendants in their motion for reconsideration ($438,4000), which far exceeds the $75,000 required by the diversity jurisdiction. *See,* Docket # 117, p. 8.